**IN THE COURT OF APPEALS OF IOWA**

No. 16-0039
Filed October 12, 2016

**IN THE MATTER OF THE RONALD R. OLDHAM TRUST**
**U/D/O 7/09/2007**

**EDWARD OLDHAM,**
        Petitioner-Appellant,

**vs.**

**STACEY OLDHAM,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Mitchell E. Turner,

Judge.


        Edward Oldham claims the probate court erred in holding trust

amendments were not the product of undue influence.  **AFFIRMED.**


        Michael M. Lindeman of Lindeman Law, and Walter J. Steggall of Holden

& Steggall, Cedar Rapids, for appellant.

        Matthew D. Piersall of Piersall Law Firm, P.C., Cedar Rapids, for appellee.


        Considered by Danilson, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Edward Oldham appeals a probate court ruling that found amendments to a trust were not procured by undue influence. We affirm.

### I.     Background Facts & Proceedings

Ronald Oldham established the Ronald Oldham Revocable Trust in July 2007. Upon Ronald's death, the trust was to deed a residential acreage and a ninety-percent interest in a farm to Edward, his son. Sheree, Ronald's daughter, was to receive the other ten-percent interest in the farm. Edward lived with his father, Ronald, on the acreage and farmed the property.

In 2011, an incident occurred in which Edward was charged with several offenses, including harassment in the first degree and dependent adult abuse of Ronald. A no-contact order was issued, and Ronald was forced to move to an assisted living center.

On October 24, 2011, Ronald signed an Amended and Restated Trust Agreement. It provided the ninety percent interest in the farm would be held in trust for Edward's benefit and distributed to Stacey Bakker, Edward's only daughter, upon Edward's death. On November 2, 2011, Ronald signed another amendment deeding the acreage to Stacey upon Ronald's death.

At trial, Ronald's attorney, Maureen Kenney, testified Ronald had previously refused requests for property transfers from both Edward and Stacey and "he was strong willed." Kenney also testified Ronald's purpose in creating the amended estate plans and trusts was to keep the property in the family. Ronald expressed concerns that Edward's legal situation might compel him to

sell the farm and acreage, but he believed Stacey would keep the property in the family.

In March 2012, the no-contact order was lifted, and Ronald moved back to the acreage where Edward resumed his care. Edward later called Ronald's attorney, stating Ronald wanted to change the trust and "put it back." An appointment was made to discuss what changes were to be made, but Ronald died before the scheduled time. In June 2012, Edward then filed an action to contest the validity of the amendments made to the trust asserting Stacey unduly influenced the trust amendments. In December 2015,[1] a trial was held, and the probate court ruled the amendments to the trust were valid. Edward appeals.

## II. Standard of Review

The parties are unable to agree on the appropriate standard of review in this matter. The Iowa Probate Code establishes a will contest as an action at law and all other probate matters are actions in equity and thus reviewed de novo. Iowa Code § 633.33 (2011). The Probate Code further states "[a]n action objecting to the probate of a proffered will, or to set aside a will, is triable in the probate court as an action at law, and the rules of civil procedure governing law actions, including demand for jury trial, shall be applicable thereto." Iowa Code § 633.311. However, the Iowa Trust Code provides "[a]n aggrieved person shall have all causes of action and remedies available to the aggrieved person in attacking the creation, revocation, or modification of a revocable trust as one would if attacking the propriety of the execution of a will." Iowa Code § 633A.3101(1). Therefore, in order to ensure Edward, as the aggrieved party,

---

[1] The trial was continued multiple times at the request of the parties.

has the same causes of action and remedies due a party contesting a will we find the standard of review is for errors at law and therefore findings of fact are binding on review if supported by substantial evidence.[2] *See In re Estate of Dilley*, No. 10-0938, 2011 WL 2695757, at *1 (Iowa Ct. App. July 13, 2011). "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'" *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995) (citation omitted).

### III. Undue Influence

To establish undue influence in the creation or modification of a trust four elements must be shown: (1) the grantor was susceptible to undue influence, (2) the beneficiary must have the opportunity to exercise undue influence, (3) the beneficiary must have the disposition to exert undue influence, and (4) the result must clearly appear to be the effect of undue influence. *Mendenhall v. Judy*, 671 N.W.2d 452, 454 (Iowa 2003). The first three elements must be proven by a preponderance of the evidence, and the fourth element must be clearly proved. *Burkhalter v. Burkhalter*, 841 N.W.2d 93, 105 (Iowa 2013).

### A.    Susceptibility

The probate court found Ronald was not susceptible to undue influence. We agree. Ronald repeatedly denied requests from Stacey to deed the acreage to her immediately. Evidence at trial showed Ronald "hated being in the nursing home and wanted to return to his home . . . and the only way he could do that . . . was to have Stacey move [there with him]." However, instead of moving to the

---

[2] Even reviewed de novo our opinion would remain unchanged.

residence and away from the nursing home he loathed, Ronald was not influenced by Stacey to do so.

The findings of the probate court are supported by substantial evidence. Ronald's ability to refuse transfers of property to both Stacey and Edward, the testimony of attorney Kenney that Ronald was of sound mind and capable of changing his estate plan, and the fact Stacey was not present when Ronald made the amendments, for which he provided substantial and logical reasons, all support the probate court's findings.

### B. Opportunity

The probate court found "Stacey did, in all probability, have the opportunity to exercise undue influence." The probate court did not specifically find Stacey used the opportunity to take some action to unduly influence Ronald. We agree.

During the time the no-contact order between Ronald and Edward was in place, Stacey was in close contact with Ronald. Testimony shows Stacey attempted and failed to secure immediate transfer of the acreage to herself, as did Edward.[3] We find this attempt to influence Ronald, combined with Stacey's other opportunities to influence Ronald, could support a finding Stacey had the opportunity but did not unduly influence Ronald.

---

[3] Evidence clearly showed both Stacey and Edward attempted to influence Ronald, but the evidence fails to show the influence was *undue*. *See In re Estate of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984) ("It is not sufficient that persuasion alone was asserted against the testator. . . . Undue influence must dominate the motives of the testator in executing his will. It must be equivalent to 'moral coercion.'" (citation omitted)).

### C.    Disposition

In order to show undue influence, Edward must also prove Stacey had the disposition to exert *undue* influence on Ronald.  The probate court found Edward failed to present evidence that "Stacey was disposed to exercising undue influence upon Ronald to achieve an improper favor."  We agree and determine substantial evidence supports this finding.

The probate court correctly noted "whatever evidence was presented referable to Stacey pressuring Ronald occurred substantially after, not prior to, the changes made to the Trust on October 24 and November 2, 2011."  Again, Stacey's attempt to have the acreage transferred to her does show a disposition to influence Ronald but does not show a disposition to *unduly* influence Ronald. *See Davenport*, 346 N.W.2d at 532*.*  Additionally, "the record does not conclusively support the notion that Stacey knew that there was a trust at that point in time, much less its content or dispositive scheme."  Stacey's lack of knowledge of the trust, combined with the evidence Stacey's alleged influence occurred after the trust was amended, leads us to uphold the probate court on this element as well.  We find, as did the district court, Stacey did not have the disposition to unduly influence Ronald.

### D.    Causation

The final element requires the change to the trust to clearly be the result of undue influence.  This final element must be clearly proved, a higher standard of proof than the first three elements.  *Burkhalter*, 841 N.W.2d at 105.  The probate court found Edward failed to prove this element.  We agree.  Many factors were

present leading up to the amendments made to the trust, and a reasonable fact finder could find those factors caused the change in the trust.

The probate court noted, "Edward chooses to ignore the fact that at the time these changes were made there were pending criminal charges against him referable to the alleged assault on Ronald . . . [and he] was found to have committed elder abuse upon Ronald." Evidence was also presented Ronald was concerned Edward would sell the acreage and farm but believed Stacey would keep the property in the family. As the probate court stated, "[g]iven the totality of the circumstances at the time these changes were made and the nature of those changes, it could almost be said that Ronald was unduly generous in his treatment of Edward." We conclude there is no error in the district court's finding that Edward failed to prove the changes in the trust were clearly caused by Stacey's undue influence.

The testimony of Ronald's attorney along with the circumstances of the relationship between Edward and Ronald at the time of the amendments provides sufficient evidence for us to conclude the probate court's ruling is supported by substantial evidence.

**AFFIRMED.**